286 So.2d 817 (1973)
Roosevelt PEYTON
v.
STATE of Mississippi.
No. 47522.
Supreme Court of Mississippi.
December 10, 1973.
*818 Clayton Taylor Lewis, Philadelphia, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Special Asst. Atty. Gen., Jackson, for appellee.
SUGG, Justice:
This is an appeal from the Circuit Court of Neshoba County. The defendant, Roosevelt Peyton, was convicted of attempted murder and sentenced to serve a term of 10 years in the Mississippi State Penitentiary. Peyton assigns as error the action of the trial court in denying a continuance, overruling objections to the argument of the prosecuting attorneys and failing to set aside the verdict of the jury because it was against the overwhelming weight of the evidence.
Peyton contends he was entitled to a continuance because of a variance between the indictment and capias. The indictment charged him with attempted murder under Section 2017 Mississippi Code 1942 Annotated (Section 97-1-7 Mississippi Code 1972 Annotated), but the charge in the capias was assault and battery with intent to kill under Section 2011 Mississippi Code 1942 Annotated (Section 97-3-7 Mississippi Code 1972 Annotated).
Peyton's attorney contended that he was prepared to defend a charge of assault and battery with intent to kill, but not the charge of attempted murder. He admitted that both the capias and a copy of the indictment were served on the defendant. Before the request for a continuance was considered, a demurrer to the indictment was filed, argued and overruled, therefore, he must have known that the indictment charged the crime of attempted murder. The trial court did not abuse its discretion in refusing the continuance.
Peyton's attorney objected to certain statements made by the county attorney and the district attorney in their arguments to the jury. The objections were dictated into the record during the course of the argument, and are attacked as a designed attempt on the part of the state's attorneys to prejudice the jury.
In many cases the Court has considered the propriety of argument of counsel and in Nelms & Blum Co. v. Fink, 159 Miss. 372, 131 So. 817 (1930) this Court stated:
It is always a difficult matter, as well as a delicate one, to determine whether there has been an abuse of the privilege of advocacy in the argument of the causes, except in few cases where it is so palpably evident that the case has been prejudiced by a statement of facts not in evidence or by gross invectives and abuse, and we do not have the advantage *819 that the trial judge has of hearing the argument as a whole. The trial judge has a peculiar and distinct advantage of the judges of this court in judging upon such questions, because he is not only familiar with the evidence and the atmosphere of the case, as it may be called, but he has heard the entire argument and knows the setting that the language complained of has in connection with the argument on both sides of a case. Very often by a course of argument counsel on one side of an argument provoke a course of argument which would not be made without being provoked, and it is, of course, easy for the trial judge to see whether this is true or not. He has a duty to perform to see that there is no such abuse of the parties in argument as would make injustice prevail in the case.... (159 Miss. at 381, 131 So. at 820).
Pitts v. State, 211 Miss. 268, 51 So.2d 448 (1951) contains a summary of the function of the appellate court when reviewing argument of counsel in the following language:
The basic conclusion to be drawn from the many decisions in the history of this court concerning argument of counsel is that counsel has an extremely liberal latitude in arguing a controversy, and that this court's responsibility is to weigh the arguments assigned as error in the scale with the entire context of the case... . (211 Miss. at 294, 51 So.2d at 459).
We have carefully considered the objections to the argument of the state's attorney in the light of the principles announced by this Court, and we hold that the trial judge did not abuse his discretion in overruling the objections made to the argument. See also Craft v. State, 271 So.2d 735 (Miss. 1973) and Cannon v. State, 190 So.2d 848 (Miss. 1966) and cases cited therein.
We note one specific objection as follows:
BY MR. LEWIS:
He said, "we believe that he is guilty, and guilty beyond every reasonable doubt," and I object to this and move the Court for a mistrial.
A similar objection was discussed in Long v. State, 163 Miss. 535, 141 So. 591 (1932) and in disposing of the objection the Court stated:
It is objected that the court erred in permitting the district attorney, over objection, to state that his deliberate judgment was that the defendant was guilty of manslaughter, and, when the court declined to exclude it, he repeated this statement. This statement was within the limitation of legitimate argument. While it might be more prudent and better ethics to draw inferences, without stating his personal opinion, from the testimony, it was permissible for him to state his conclusions to the jury. The very purpose of an advocate is to help the jury draw conclusions from the evidence and to make suggestions of what is a proper conclusion, and to give such reasons as occur to counsel as to what conclusions should be so drawn. (163 Miss. at 548, 141 So. at 594).
We approve the statement in Long, supra, that it would be more prudent for a prosecuting attorney to draw inferences without stating his personal opinion. Since there was ample evidence from which the prosecuting attorney could draw the conclusion that Peyton was guilty, the trial court did not err in overruling the objection.
The last assignment of error goes to the sufficiency of the evidence. Peyton was living with a woman named Betty, Jimmy Lee Shannon's sister, and about a week before the events of this case transpired Betty *820 left Peyton and moved into the home of her brother, Jimmy Lee Shannon. Peyton and Betty had one child born out of wedlock and on January 21, 1973 Peyton went to Shannon's home, took the baby away, but returned it later the same day.
About 10 or 15 minutes before 2:00 a.m. the following morning defendant returned to the Shannon home and shouted, "I'm for business ... I want my baby out of there and I'm for business if I have to come in there and kill all of you." Peyton then knocked out the light bulb on the front porch of the home and kicked the front door partially open. He put one foot and one hand through the opening and pointed a pistol inside the house at which time Jimmy Lee Shannon shot him in the hand. Peyton dropped the pistol which he had inserted through the opening, picked it up and retreated to the street in front of the home. He then continued his threats, walked around the home, specifically threatened to kill Jimmy Lee Shannon, and stated that he was coming in. At this time Shannon had moved to a bedroom overlooking the front porch and when Peyton stepped on the bottom step Shannon shot him in the face. Peyton fell and when he was picked up a cocked and loaded .22 pistol was found under his body. He was carried to the hospital and a nurse removed a knife from the back waistband of his trousers.
Defendant called as his only witness one Leon Baxstrum who testified that Peyton returned a shotgun which had been borrowed from the witness by Peyton.
We have held repeatedly that the jury is the sole judge of the credibility of witnesses and the weight and worth of their testimony. See Clanton v. State, 279 So. 599 (Miss. 1973) and cases cited therein.
In this case there was ample evidence to support the verdict of the jury. The state proved that Peyton had the intent to murder his intended victim, Jimmy Lee Shannon, and committed overt acts toward the consummation of the crime by attempting to forcibly enter his victim's home after arming himself with a deadly weapon. Peyton was prevented from carrying out his intent to murder only because his intended victim shot him first. See Ford v. State, 248 So.2d 731 (Miss. 1969).
Affirmed.
RODGERS, P.J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.